J-A06038-21 & A06039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: C.L.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C.B., FATHER | : | No. 867 WDA 2020 |

Appeal from the Order Entered October 1, 2020
In the Court of Common Pleas of Clarion County Orphans' Court at
No(s):  74 OC 2020

| IN RE: I.C.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C.B., FATHER | : | No. 1250 WDA 2020 |

Appeal from the Order Entered July 15, 2020
In the Court of Common Pleas of Clarion County Orphans' Court at
No(s):  75 OC 2020

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED:  March 26, 2021**

J.C.B. (Father) appeals from the orders entered in the Clarion County Court of Common Pleas, Orphans' Court, granting the petitions of V.L.L. (Mother) and her husband, J.M.L. (Stepfather), to involuntarily terminate Father's parental rights to, respectively, the minor children C.L.B. and I.C.L.,

(collectively, the Children), so that Stepfather may adopt the Children.[1]  After careful review, we affirm.

I.C.L. is a female born in January 2014, and C.L.B. is a male born in January 2016, to Mother and Father.  Mother and Father never married, and ended their relationship in 2016.  N.T., 7/13/20, at 46.  In 2017, Mother obtained a protection from abuse order (PFA) against Father after incidents of

_____

[1] Each termination petition and court order pertained to one child, and the dockets have separate certified records.  Father has filed separate, nearly-identical briefs, regarding each child, in this Court.  As the orphans' court held one hearing on both termination petitions and the issue on appeal pertains to both Children, we address the appeals in a single memorandum for ease of disposition.

The orphans' court dated the termination orders — one for each child — on July 13, 2020, and "entered" them on July 15th.  The court subsequently entered corrective orders on October 1 and November 19, 2020, to reflect notice pursuant to Pa.R.C.P. 236 and Orphans' Court Rule 4.6.  Meanwhile, Father filed the instant appeal at Docket 867 WDA 2020 on August 12, 2020, and at Docket 1250 WDA 2020 on November 2, 2020.  We deem the appeals are timely, albeit premature.  **See Carr v. Michuk**, 234 A.3d 797, 805 (Pa. Super. 2020) ("'[A]n order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given.'  The parties' receipts of notice of the order do not alter the formal date of the order's entry on the docket and the associated commencement of the period allowed for appeal for purposes of the rules.") (citations omitted).  **See also** Pa.R.A.P. 903, 905(a).

Finally, we note that on January 13, 2020, we denied Mother's motions, to quash/and or dismiss Father's appeals as untimely, without prejudice for her to re-raise the issue before this panel.  In her brief regarding C.L.B, Mother re-raises her request for us to quash or dismiss the appeal at Docket No. 1250 WDA 2020.  Mother's Brief at Docket No. 1250, at 9, 11, 17.  For the reason set forth **supra**, regarding the orphans' court's corrective orders, we deny such relief.

domestic violence between them, including when Mother was pregnant and subsequently with both children present.[2] *Id.* at 10, 32, 46. The PFA order provided that Father was permitted supervised visits, but, according to Mother, he did not pursue any visitation with the Children, did not pay child support, or send gifts to the Children. *Id.* at 11, 38. Mother's PFA order against Father was extended until 2021 because Father sent Mother a harassing email. *Id.* at 46. On August 14, 2019, a "cease and desist order" was issued against Father to "immediately stop all communications" with Mother and her mother, V.F. (Maternal Grandmother). *Id.* at 16-17.

On March 18, 2020, Mother and Stepfather filed petitions to terminate Father's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b), along with reports of intention to adopt. Mother and Stepfather also filed petitions on July 29, 2020, for Stepfather to adopt the Children. Meanwhile, the orphans' court appointed Cassandra M. Munsee, Esquire, to serve as guardian *ad litem* and legal counsel (GAL/Counsel) for the Children.[3]

_____

[2] Both Mother and Father testified about a violent incident in 2014, which led to an "assault charge." N.T. at 13, 32. Father denied being convicted and stated he received "ARD." *Id.* at 41.

[3] *See In re Adoption of L.B.M.*, 161 A.3d 172, 174, 180 (Pa. 2017) (plurality) (23 Pa.C.S. § 2313(a) "requires the appointment of counsel who serves the child's legal interests in contested, involuntary [termination] proceedings;" a child's legal interest as synonymous with their preferred outcome). The Pennsylvania Supreme Court has held that a trial court did not err in allowing the children's guardian *ad litem* to act as their sole representative during the termination proceeding because, at two and three

The orphans' court conducted an evidentiary hearing on July 13, 2020. At this time, I.C.L. was six years old and C.L.B. was four years old. Mother and Stepfather are married, and live with the Children, as well as their son, B.L. N.T. at 8. Mother testified to the following: Father had not seen the Children in more than three years. *Id.* at 9. The Children have known Stepfather for three years, and refer to him as their father. *Id.* at 12-13. The younger child, C.L.B., does not remember Father, and the older child, I.C.L., "[s]lightly . . . knows she had a first dad," and refers to Father "as her first dad." *Id.* at 12. As stated above, Father had not attempted to arrange supervised visits, paid child support, or sent cards, letter, or gifts to the Children. *Id.* at 11-12. Stepfather "[s]tays home from work if the kids are sick[,] takes them to the dentist and to the doctor[, goes] on family vacation[, and] is present for everything, [including] school events." *Id.* at 12. Stepfather testified he loves the Children and "[t]hey are like [his] own children." *Id.* at 23.

Father also testified. At the time of the hearing, he had been incarcerated for 17 months, since February of 2019. *See* N.T. at 33. Father

---

years old, the children were incapable of expressing their preferred outcome. *In re T.S.*, 192 A.3d 1080, 1088 (Pa. 2018). We do not comment on the quality of the GAL/Counsel's representation of the Children. *See In re: Adoption of K.M.G.*, 219 A.3d 662, 669 (Pa. Super. 2019) (*en banc*) (this Court has authority only to raise *sua sponte* the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation), *aff'd*, 240 A.3d 1218 (Pa. 2020).

- 4 -

denied it has been three years since he saw the Children, and further testified to the following. *See id.* at 38. Prior to being incarcerated, he attempted to arrange for supervised visits with the Children, explaining: "[W]henever I got the PFA charges from trying to get ahold of my children, that's when I pursued [sic] and I came to prison." *Id.* at 37. The basis for the PFA was Father's attempt to "pursue [his] kids;" Father denied there was any other reason. *Id.* at 39. Father did not hire an attorney to seek visits "through the court system" because he "didn't have time." *Id.* at 38.

On the same day of the hearing, July 13, 2020, the orphans' court terminated Father's parental rights to both Children. The court subsequently entered the orders as summarized above. *See* n.1, *supra*.

On August 12, 2020, Father filed a notice of appeal at Docket No. 867 WDA 2020 from the termination order regarding C.L.B., but did not file a concise statement of errors complained of pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) until August 25th.[4] On November 2, 2020, Father filed a notice of

---

[4] *See* Pa.R.A.P. 1925(a)(2)(i) ("The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal."). Neither this Court nor the trial court entered an order directing Father to file a concise statement, and there is no allegation of prejudice by any party from Father's late filing. Thus, we decline to find waiver for failure to comply with Pa.R.A.P. 1925(a)(2)(i). *See In re K.T.E.L.*, 983 A.2d 745, 747 n.1 (Pa. Super. 2009) (appellant's failure to simultaneously file a Rule 1925(b) statement did not result in waiver of all issues for appeal where the appellant later filed the statement, and there was no allegation of prejudice from the late filing).

appeal at Docket No. 1250 WDA 2020, from the termination order regarding

I.C.L., along with a concise statement.[5]

In his briefs, Father raises one issue for our review:

Did the [orphans' court] abuse its discretion and err in failing to give full, proper and appropriate weight to the Cease Contact Order caused to be issued against [ ] Father, and all of its necessary implications, when ruling on Father's imposed lack of contact with his children of tender years, and his ability to contact them?

Father's Briefs at 4.[6]

Father challenges the orphans' court finding that he did not attempt to contact the Children. He avers the following: his attempt to contact the Children "resulted in his imprisonment as a violation of the PFA Order." Father's Briefs at 11. Mother, her father (Maternal Grandfather), and possibly Maternal Grandmother colluded for Maternal Grandfather, who works in the prison system, to obtain a cease and desist order. The order was "a barrier, manufactured by Mother and her family, to effectively prevent Father from having any contact with his children." *Id.* at 9. Pursuant to the order, Maternal Grandfather "became the sole means by which Father could . . . contact his children," but Maternal Grandfather then "simply ignored any

_____

[5] On December 10 and 17, 2020, Father filed motions to consolidate the two appeals at Dockets 1250 WDA 2020 and 867 WDA 2020, respectively. On December 18th and December 22nd, this Court denied the motions at Docket Nos. 1250 WDA and 867 WDA, respectively. Nevertheless, we address both appeals together in this memorandum.

[6] As stated above, Father filed nearly-identical briefs at the two dockets.

attempts by Father to reach his children." ***Id.*** at 6-7. Father could not contact Mother or Maternal Grandmother directly or through third parties to reach the Children. He "was left with the Hobson's Choice of not contacting his children, or lengthening his prison stay." ***Id.*** at 8. We conclude no relief is due.

We note the relevant standard of review:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. ***See*** 23 Pa.C.S. § 2511. It requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we focus on Section 2511(a)(1) and (b), which provides as follows:

> **(a) General rule.** — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > \* \* \*
>
> **(b) Other considerations.** — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

To satisfy the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008).

The orphans' court must then consider the parent's explanation for the abandonment of the child, in addition to any post-abandonment contact. ***Id.*** This Court has emphasized that a parent does not perform parental duties by displaying "a merely passive interest in the development of [a] child." ***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. . . .

***Id.*** (citations omitted).

The orphans' court addressed Father's claims as follows:

### I. Claims I, II, and III

> First, [Father] alleges [the orphans'] court erred by failing to find that [M]other, and her father, were engaged in a plot to deliberately and maliciously interfere with [Father's] ability to contact his [children]. Secondly, [Father] alleges that the [orphans'] court erred in failing to find that [M]other and her father engaged in official oppression by causing a no-contact order to issue against [Father] through the prison system ([M]other's father being an officer in the Pennsylvania penal system, and caused the order to be issued) for the sole and improper purpose of preventing [Father] from having contact with his [children] and to create and manufacture the false impression of abandonment, by deliberately filing the instant action within days of the statutory period for presumed abandonment expiring. Third, [Father] alleges that the [orphans'] court erred by failing to find that the issuance by [M]other and her father, of a no-contact order preventing [Father] from direct contact with [Mother and Maternal

Grandmother], and limiting all contact only through [Maternal Grandfather,] was itself direct evidence of attempted contacts by [Father] with his [children], such as would preclude a finding of abandonment, and which prohibits a finding of the termination of [Father's] rights.

\* \* \*

By looking at the totality of the circumstances, this court found that [Father] has failed to perform parental duties not only for the six months prior to the filing of the termination petition, but also considering the whole history. This time frame includes the period [Father] was not incarcerated from January 2017 to February 2019 where [Father] made no efforts to perform parental duties as he was "running from the law[.]" [**See** N.T. at 44.]

\* \* \*

[M]other testified that she sought the [PFA order, issued November 9, 2017,] after [Father] allegedly choked her and exhibited other violent behavior in the presence of the children. [N.T. at 10.] Additionally, [M]other testified that the Cease and Desist Order was executed by [Maternal Grandfather,] who wished to protect his wife and daughter ([M]other) from future contact by [Father] due to his abusive history. **Id.** at 16. Neither the Cease and Desist Order nor the [PFA] Order covers [the Children]. [Father] has had other means to check in on and visit his [children], as further explained below, but failed to do so.

The Supreme Court in **In re J.L.Z.**[, 421 A.2d 1064 (Pa. 1980),] found that the difficulties a father encountered in exercising his visitation rights were not so severe "to justify his virtual complete lack of communication and association with child for three years[.]" [**Id.** at 1065.] Unlike in **In re Adoption of R.J.S.**, [901 A.2d 502 (Pa. Super. 2006),] there is no court order that barred [Father] from having contact with his [children]; rather, there was merely a custody provision requiring supervised visits in the [PFA] Order filed by [M]other after [Father] was violent with her. [Father] has not seen [C.L.B.] since he was approximately six months old[;] his son is now four and a half years of age. [Father has not seen I.C.B. in the past 3.5 years. Father] testified that he did not pursue visitation with his

- 10 -

[children] prior to incarceration because he "didn't have time." [**See** N.T. at 38.]

The fact that the Cease and Desist Order was issued does not preclude abandonment. As aforementioned, this Order does not list [Father's children] and was merely put into place to protect [M]other and [Maternal G]randmother from [Father's] violent behavior. [M]other testified that she was not aware that she was listed on the Cease and Desist Order. [**See** N.T. at 18.] Additionally, [Stepfather] is not listed on the Order. [Stepfather] testified that his business is advertised and public knowledge. [Father] could have contacted him in regards to his [children], but has not done so.

Consequently, there is no evidence to support [Father's] claims[. Father] had the opportunity to set up supervised visitation with a facility when he was not incarcerated. This court found that he did not make even the slightest effort to create ties with his [children]. Likewise, upon incarceration, [Father] could have reached out to numerous individuals regardless of the Cease and Desist Order. [Father] has made no effort to perform parental duties for the past several years and has no bond with his [children].

\* \* \*

## II. Claim IV

Fourth, [Father] alleges that the court erred by failing to find that when the evidence presented by [M]other and [Stepfather] directly contradicted each other, that [M]other failed to present any credible evidence which would permit or justify the termination of [Father's] parental rights, such evidence canceling each other out.

\* \* \*

This court finds nowhere in the Notes of Testimony . . . evidence presented by [M]other and [Stepfather that] directly contradicted each other. Additionally, this court finds that [M]other . . . has established by clear and convincing evidence the existence of grounds for terminating [Father's] parental rights involuntarily.

Orphans' Ct. Ops. (C.L.B.) 9/16/20 & (I.C.L.) 11/18/20, at 1-6 (unpaginated).

Our review of the record supports the orphans' court's conclusion that Mother satisfied her burden of establishing, with credible evidence, that Father failed to perform parental duties for at least six months prior to the filing of the petition. Thus, we conclude the trial court did not err or abuse its discretion in finding sufficient evidence to support the termination of Father's parental rights under section 2511(a)(1).

With respect to Section 2511(b), we note Father has waived any challenge by failing to raise it in his concise statement and statement of questions involved portion of his brief on appeal, and by failing to develop it in the argument section of his brief. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-466, n.3 (Pa. Super. 2017).

Even if Father had not waived the challenge to Section 2511(b), we would conclude Mother has met her burden as well. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). "The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *Id.* at 763.

As discussed *infra*, the orphans' court found Father has made no effort to perform parental duties for the past several years and has no bond with the Children. Orphans' Ct. Ops. (C.L.B.) 9/16/20 & (I.C.L.) 11/18/20, at 1-6. The court appropriately considered the Children's need for safety and stability and

determined that the termination of Father's parental rights best met the Children's needs and welfare. After careful review, we conclude there is competent evidence of record that supports the orphans' court's decision. We do not discern an error of law or abuse of discretion.

Accordingly, we affirm the orders involuntarily terminating Father's parental rights to the Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/2021